**EAST TENNESSEE BAPTIST HOSPITAL, Petitioner/Cross–Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent/Cross–Petitioner.**

Nos. 91–6171, 91–6294.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 6, 1992.

Decided Oct. 7, 1993.

E.H. Rayson, John B. Rayson (argued and briefed), Warren L. Gooch, Kramer, Rayson, McVeigh, Leake & Rodgers, Knoxville, TN, for East Tennessee Baptist Hosp.

Collis Suzanne Stocking (briefed), Magdalena Revuelta (argued), N.L.R.B., Office of the General Counsel, Washington, DC, Martin M. Arlook, Director, N.L.R.B., Region 10, Atlanta, GA, Aileen A. Armstrong, Deputy Assoc. Gen. Counsel, N.L.R.B., Appellate Court Branch, Washington, DC, for N.L.R.B.

Before: MARTIN and SILER, Circuit Judges; and CLELAND, District Judge.*

CLELAND, District Judge.

East Tennessee Baptist Hospital ("Hospital") seeks review of and the National Labor Relations Board seeks enforcement of its order and decision finding that the Hospital committed unfair labor practices by refusing to provide information on nonunit employees. For the reasons stated below, we affirm in part and deny in part enforcement of the Board's order.

## FACTUAL BACKGROUND

The primary issues in this case revolve around the interpretation and application of two collective bargaining agreements the Hospital entered into with the Office and Professional Employees International Union ("Union"). The first agreement covered 1988–1989 and the second, 1989–1991.

The first issue arises out of a disagreement relating to wage records information.

After the 1988 collective bargaining agreement was executed, the Hospital decided on a 5 percent general wage increase which was granted to all unit and nonunit employees. On August 19, 1988, the Union wrote the Hospital requesting certain information including the "names, job titles and rates of pay *before* the July 1988 wage increase for *all* ETBH non-bargaining unit employees." The Union based its request on the following language contained within the collective bargaining agreement:

[E]ffective July 4, 1988, each employee shall receive a market wage adjustment based on a percentage of the employee's existing wage rate equal to the percentage market wage adjustment (not including special market wage adjustment) that non-bargaining unit employees will receive in July, 1988; ....

Article 19, Section 19.2(b) of the 1988 agreement. It argued that it was entitled to the information so that it could verify that the unit and nonunit employees were treated equally.

The Hospital declined to supply the requested information stating that it was under no obligation to provide information to the Union regarding nonunit employees. Shortly thereafter, the Union expanded the scope of its request by indicating that it required job information for nonunit employees both before *and* after the 5 percent wage increase. The Hospital again declined stating that such information was confidential (both to the nonunit employee and the Hospital) and that it was therefore not obligated to provide the records requested. Instead, it suggested that a mutually agreed upon certified public accountant be hired to review the records and then report if there were any violations of the collective bargaining agreement. The Union refused the Hospital's suggested course of action.

The second issue arises out the 1989 collective bargaining agreement. Following the execution of the 1989 agreement, the Union filed a grievance with the Hospital involving a three-day layoff of a union employee because of excessive absenteeism. The Union requested copies of all attendance, suspension and discharge records for all bargaining unit and non-bargaining unit employees from June 1, 1988, up to and including the week it supplied the information. It based its request on language in Article 19 of the 1989–1991 agreement which provided that all personnel policies were to pertain on an equal basis to all employees. The Hospital refused, calling the request "excessively burdensome and out of line with any legitimate need or interest of the Union."[1] The Union

* The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. The Hospital had 1800 employees only 200 of which were members of the bargaining unit.

The Hospital calculated that it would take a person a full work week to comply with the Union's request.

representative, Pope, offered to review the employee records himself. The Hospital representative, Standley, suggested that a meeting take place to discuss the issue.

The two met in early November, 1989. Standley provided the records of all unit employees and offered to supply the Union with all records of any nonunit employee the Union could identify as suspected of having received "better" treatment in an "absentee" context than a unit employee.[2] Pope refused and insisted that he be allowed access to all nonunit employee attendance records.

## PROCEDURAL BACKGROUND

Based upon the foregoing[3], the Union sought an order from the National Labor Relations Board requiring the Hospital to allow access to its records. The case was assigned to an administrative law judge ("ALJ") for hearing and argument. At the hearing before the ALJ, the Union representative testified that he had advised the Hospital that the Union could not agree to the CPA requirement because (1) it would cost too much and (2) the Union needed the "right to go out and independently verify any kind of wage information." The ALJ concluded that the wage information of nonunit employees was relevant to the Union's bargaining responsibilities because the contract required equal treatment between unit and nonunit employees. He also concluded that the Hospital did not seek to accommodate its bargaining obligations with regard to confidentiality, stating that the Hospital had taken "an inconsistent position" by first claiming confidentiality and by then later expressing a willingness to let a CPA review the records.

In reference to the nonunit employee attendance records, the ALJ concluded that these were relevant and that, in view of Pope's offer to come to the Hospital and

review the records, the Hospital had failed to establish that the Union's request was burdensome.[4]

The ALJ recommended that the Board find that the Hospital had engaged in unfair labor practices and that it had violated §§ 8(a)(1) and (5) of the Labor Relations Act. He recommended that a cease and desist order be entered and that the Hospital be ordered to allow the Union access to the wage and employee attendance records. The Hospital filed timely exceptions to the Report.

The three-member panel of the Board adopted the ALJ's Report and slightly amended the Order in a 2–1 decision. The Board concluded that since the contract provided for unit and nonunit employees to receive the same wage increase, there were no grounds on which the Hospital could insist on any restrictions to the Union's entitlement to access to the wage records. The Board held that the Hospital had "ostensibly relinquished," by the terms of the contract, any right to control access to these records. It discounted the Hospital's proposal of employing a "mutually agreeable" CPA stating that it would give the Hospital a "veto power" over who the Union's agent would be. Additionally, the Board held that the Hospital had not shown that the wage information was so complex that a CPA was necessary to interpret the records. The issue of "burdensomeness" was not separately addressed by the Board.

The Hospital appeals the decision of the Board finding that it had committed unfair labor practices and the order requiring it to allow access to its wage and attendance records to Union representatives. Specifically, the Hospital argues that the Board erroneously held that the Hospital had waived its statutory right to bargain over the form and

---

**2.** The record established that the Union had the name of at least one nonunit employee that had "missed a hell of a lot of work." JA–132.

**3.** Issues additional to these were presented to the Board also. However, the Board ruled against the Union on those counts and it did not pursue them as part of this appeal. One other charge against the Hospital regarding employee Sharon Rimmer has not been addressed by the Hospital in its appeal brief. Upon review, we conclude

that the findings of the Board in this respect are correct. The Court will grant the Board's request for enforcement of its order regarding Sharon Rimmer.

**4.** Although Standley denied (or failed to recall) that Pope had offered to come in and review the record, the ALJ determined that full credibility would be given to Pope and not Standley.

manner in which requested information would be furnished. The Hospital also claims the Board erred in finding that it had engaged in unfair labor practices since it offered the following good faith, reasonable counter-proposals to the Union's request: 1) the suggestion to use an independent CPA to review the wage records and 2) the offer to supply information on specific nonunit employees who were suspected of receiving better treatment.

The Board has cross-filed with this Court a request for a judgment enforcing the Board's order in full.

## STANDARD OF REVIEW

■ On review, the Board's findings of fact will be upheld if they are supported by substantial evidence on the record as a whole. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951). The Board's application of the law to particular facts is also reviewed under the substantial evidence standard. The Board's reasonable inferences may not be displaced on review even though the reviewing court might have reached a different conclusion had it considered the matter *de novo*. *NLRB v. United Insurance Co.*, 390 U.S. 254, 260, 88 S.Ct. 988, 991, 19 L.Ed.2d 1083 (1968); *Universal Camera*, 340 U.S. at 488, 71 S.Ct. at 465. A reviewing "[c]ourt[ ] must, of course, set aside Board decisions which rest on an 'erroneous legal foundation.'" *NLRB v. Brown*, 380 U.S. 278, 292, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1965), citing *NLRB v. Babcock & Wilcox Co.*, 351 U.S. 105, 112, 76 S.Ct. 679, 684, 100 L.Ed. 975 (1956).

## DISCUSSION

■ It is well settled that "[t]he duty to bargain collectively, imposed upon an employer by § 8(a)(5) of the National Labor Relations Act, includes a duty to provide relevant information needed by a labor union for the proper performance of its duties as the employees' bargaining representative." *Detroit Edison Co. v. NLRB*, 440 U.S. 301, 303, 99 S.Ct. 1123, 1125, 59 L.Ed.2d 333 (1979) (citations and footnote omitted). In evaluating an employer's obligation to fulfill the union's information requests, the Board and courts apply a "discovery type standard," under which the requested information need only be relevant and useful to the union in fulfilling its statutory obligations in order to be subject to disclosure. *NLRB v. Acme Industrial Co.*, 385 U.S. 432, 437, 87 S.Ct. 565, 568, 17 L.Ed.2d 495 (1967); *General Motors Corp. v. NLRB*, 700 F.2d 1083, 1088 (6th Cir.1983). However, "[a] union's bare assertion that it needs information ... does not automatically oblige the employer to supply all the information in the manner requested." *Detroit Edison*, 440 U.S. at 314, 99 S.Ct. at 1131. The union's interest in arguably relevant information does not always predominate over other legitimate interests. Id. at 318, 99 S.Ct. at 1133.

■ As to information regarding bargaining unit employees, there is a presumption that the information sought is relevant to the union's bargaining obligation. *E.I. Du Pont de Nemours & Co. v. NLRB*, 744 F.2d 536 (6th Cir.1984). However, when the information requested of an employer is about employees or operations other than those represented by the union, it is necessary for the union to prove relevancy without the benefit of any presumption. *Id.*

■ In this case, the Board found that the requested wage and attendance information was relevant and that the Hospital committed unfair labor practices by refusing to turn over the allegedly relevant information. In its opinion, the Board held that the Hospital's "obligation to provide the information arises from the contractual commitment to grant unit and nonunit employees the same wage increase" and that the Hospital had "ostensibly relinquished" its right to insist upon any restriction to the access of confidential information about nonunit employees. By interpreting the contract in such a manner, the Board, in one fell swoop, not only determined that the wage and attendance information sought was relevant but also that the Hospital waived its right to object to the disclosure of confidential information.

We agree that the wage and attendance records in issue are "relevant." We do not agree, however, that the Hospital's refusal to

disclose the requested records *in the form and manner demanded by the Union* constituted a failure to bargain. Because the Hospital raised its concern over the confidentiality of the records involved, it became incumbent upon the Union to demonstrate that its need for the materials outweighed the Hospital's interest in maintaining the confidentiality of the records. *E.W. Buschman Co. v. NLRB*, 820 F.2d 206, 207 (6th Cir.1987).

The Board erred when it adopted the ALJ's recommendation to discredit the Hospital's "confidentiality" defense. The ALJ noted that the Hospital raised the issue of confidentiality, but that it "subsequently took an inconsistent position regarding confidentiality" when it "expressed a willingness to permit a CPA to examine its records...." The ALJ also noted that the Hospital had failed to prove that the records could not receive adequate protection in spite of the Union's assurances that it would protect their confidentiality.

There is no supportable basis for the ALJ's conclusion. The Court fails to see the inconsistency in first expressing confidentiality concerns and then suggesting that a neutral third party—especially one bound by ethical and legal obligations to maintain confidentiality—review the records. Member Oviatt thought it "eminently prudent." So do we.

The ALJ thought it crucial that the Union offered to protect the confidentiality of the records sought. However, this offer did not materialize **until** the hearing before the ALJ. The fact that Pope offered to assure confidentiality **after** the bargaining had ceased and an unfair labor practice charge filed does not provide *substantial evidence for determining that the Hospital's confidentiality* concerns were meritless. We find no basis in the record for a conclusion that the Hospital's confidentiality concerns were anything other than legitimate.

The Board erred as well when it determined that the Hospital waived—"ostensibly—its right to bargain over whether it could restrict access to confidential information concerning nonunit employees. It is well established that waivers of statutory rights must be "clear and unmistakable."

*Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 708, 103 S.Ct. 1467, 1477, 75 L.Ed.2d 387 (1983). Here, there has been no "clear and unmistakable" waiver. The language in the collective bargaining agreement does not even minimally approach that which this Court found to constitute a waiver in *Local 1392, International Brotherhood Of Electrical Workers v. NLRB*, 786 F.2d 733, 736 (6th Cir.1986). The fact that the contract is silent on the issue is of major import—"we will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is 'explicitly stated.'" *Metropolitan Edison, supra* 460 U.S. at 708, 103 S.Ct. at 1477.

Member Oviatt observed accurately in his dissent:

> To conclude, as the majority apparently does, that agreement to a clause providing that market wage increases will be equivalent is the same as *also* agreeing that the Respondent will provide the Union with confidential information about nonunit employees is to rewrite the parties' contract.

We agree. The Board erred as a matter of law in construing the contract in such a manner as to hold that the Hospital had waived its right to restrict access to confidential information of nonunit employees. Because the Board's interpretation of the contract is not consistent with established case law nor with the policies of the National Labor Relations Act, it is not entitled to deference. No findings built upon this faulty foundation can stand.

There is no doubt that the Union had a legitimate right to assurance that the wage and attendance policies were being evenly applied. However, that is all they had a right to. Arguably relevant, confidential information concerning nonunit employees should have been disclosed only if it were first ascertained that the policies were being unevenly applied. In both instances, the Hospital offered reasonable alternative solutions which would have allowed the Union to ascertain whether the contracts were evenly applied while protecting the confidential records of nonunit employees. "Presentation of bona fide concerns by the company, coupled

with reasonable proposals designed to satisfy the needs of the union and to achieve a mutually satisfactory resolution of the union request, is simply not a refusal to bargain." *Shell Oil Co. v. NLRB,* 457 F.2d 615, 620 (9th Cir.1972).

In view of the fact that the Union failed to establish that it was entitled to confidential information concerning nonunit employees, we find that the Hospital's offers were facially reasonable and not a pretext for refusal to bargain in good faith. The Board's findings to the contrary are not supported by substantial evidence.

■ We similarly reject the Board's decision concerning the Hospital's claim of "burdensomeness" for the simple fact that neither the ALJ in his legal conclusions nor the Board in its order considered the Hospital's proposal regarding the attendance records. We think that the Hospital's proposal was critical to the bargaining process and therefore critical to the question of whether the Hospital refused to bargain. The Board's failure to consider the proposal requires its decision to be vacated. Additionally, we find, as a matter of law, that the Hospital did not refuse to bargain.

The Union requested nonunit employee attendance records. The Hospital objected, arguing the request was too burdensome. Pope offered to shoulder some of the burden by suggesting that he review the confidential files himself. The Hospital proposed that a more proper sharing of the burden would be accomplished if the Union were to present the names of nonunit employees whom the Union suspected of having absentee problems but escaping the discipline meted out to unit employees. Doing so would have eliminated the need to pull and copy for Mr. Pope the records of 1600 nonunit employees which were in over 60 offices located throughout the Hospital. We find no basis for concluding that this suggestion was anything but reasonable in light of the fact that these volumes of records contained confidential information and that the Hospital's burden-relieving suggestion would have moved the parties toward a reasonable accommodation of concerns held by each.

In support of its claim that it needed non-unit employee records, the Union suggested, in effect, that there may have been collusion between employer and nonunit employee, that the Hospital might be harboring undisciplined nonunit employees with absentee problems. However, "[g]ood-faith bargaining necessarily requires that claims made *by either bargainer* should be honest claims.... If such an argument is important enough to present in the give and take of bargaining, it is important enough to require some sort of proof of its accuracy." *NLRB v. Truitt Manufacturing Co.,* 351 U.S. 149, 152–53, 76 S.Ct. 753, 755–56, 100 L.Ed. 1027 (1956) (emphasis added). Having submitted an accusation such as this, the ball remained in the Union's court to present some proof of the claim's accuracy. The record indicates no such showing.

Each step of the bargaining process up to this point resulted in a narrowing down of options—compromising—toward a common goal of providing the Union with relevant information while accommodating the Hospital's concerns. At this point, the Union retreated to its original position and, digging in its heels with no further bargaining effort, filed an unfair labor practice charge. In the Court's opinion, in the face of the Hospital's legitimate, good faith objection coupled with an offer to cooperate, the Union's "resort to the Board [wa]s premature." *Emeryville Research Center v. NLRB,* 441 F.2d 880, 887 (9th Cir.1971).

The Board's request for enforcement of its order regarding wage information and attendance records is DENIED. The Board's request for enforcement of its order regarding Sharon Rimmer's transfer is GRANTED.

BOYCE F. MARTIN, Jr., Circuit Judge, concurring in part and dissenting in part.

I agree with the majority that Baptist Hospital did not refuse to bargain over the best way for the union to ensure that wages for unit and nonunit employees were equal. I disagree, however, with the majority's conclusion that the hospital continued to bargain concerning how to provide the union with sufficient attendance information.

The union asked for attendance information regarding unit and non-unit employees. The hospital objected, arguing that the union's request was too burdensome. The union countered with a proposal to relieve the burdensomeness of the request by offering to conduct the investigation itself. The hospital refused this request, and countered with an offer to provide attendance records for non-unit employees that the union suspected of being treated differently from unit employees. The union insisted on receiving *all* relevant information—all information regarding non-unit attendance records, not just information for a few non-unit employees—but the hospital refused to discuss ways for the union to receive all relevant information. Information regarding attendance discipline is relevant information because article 19 of the 1989–91 collective-bargaining agreement provided that Baptist's policies would treat unit and non-unit members equally. Baptist therefore had a duty to provide the Union with sufficient information to ensure that its members were not treated differently. *See NLRB v. Acme Industrial Co.*, 385 U.S. 432, 435–36, 87 S.Ct. 565, 567–68, 17 L.Ed.2d 495 (1967). "There can be no question of the general obligation of an employer to provide information that is needed by the bargaining representative for the proper performance of its duties." Baptist's offer to provide attendance information on employees who the Union suspected of being treated leniently did not ensure that Baptist was treating unit and non-unit employees equally. The fundamental purpose of allowing Unions to discover relevant information is to allow them, as exclusive bargaining representative chosen by the employees, to ensure that the employer complies with the collective-bargaining agreement. Baptist's response that it would provide information on employees who the Union suspected of being treated more leniently than unit employees did not provide the union with sufficient information to know that the contract was being complied with because there could have been non-unit employees who were being treated differently than unit employees but who the Union did not suspect were being treated differently. By failing to provide a response that would allow the Union to know whether Baptist was complying with the contract, Baptist's response was insufficient under section 8(a)(1) of the National Labor Relations Act and did *not* constitute good-faith bargaining.

Of course, Baptist was entitled to object to the extent of the Union's request for attendance information based upon Baptist's belief that the Union's request was burdensome. *See Soule Glass & Glazing Co. v. NLRB*, 652 F.2d 1055, 1098 (1st Cir.1981), which held that union has a right to receive relevant information, but not in the precise form and scope demanded by the union. Baptist, however, went further than merely objecting to the Union's request: Baptist refused both to provide all relevant information and to bargain over the best method for providing the Union with sufficient information to know that Baptist was complying with the contract. Following the Union's offer to relieve the burdensomeness of its request by providing personnel to help compile attendance records, Baptist had a duty under section 8(a)(1) to continue to bargain in good faith by either handing over all relevant information or proposing a solution that would allow the Union to know that Baptist was complying with the contract. By refusing to turn over all relevant information and by refusing to negotiate further with the Union over how to accommodate the Union's legitimate concerns, Baptist breached its duty under section 8(a)(1) to bargain in good faith and committed an unfair labor practice.

The purpose of allowing a union to discover relevant information is to allow the union to know that the employer is complying with the contract. The hospital's offer to provide only partial attendance records does not fulfill this purpose because the union cannot know that the non-unit employees about whom it has no information are being treated the same as unit employees. Therefore, when the hospital offered to provide only a portion of relevant information and then refused to discuss the matter further, it failed to bargain with the union and committed an unfair labor practice.

This case provides a perfect demonstration of the proper method to bargain over relevant information. Regarding wage information, the hospital's offer to guarantee, albeit through a third party, that it was not treating unit and non-unit employees differently is the consummate example of good-faith bar-

1147

gaining because the hospital's offer provided a way for the union to know that the hospital was complying with the contract. On the other hand, the hospital's offer to give only some attendance records was insufficient to constitute good-faith bargaining because it did not provide a way for the union to know that the hospital was complying with the contract. Therefore, the majority's opinion is fundamentally flawed when it states, "In both instances the Hospital offered reasonable alternative solutions which would have allowed the Union to ascertain whether the contracts were evenly applied while protecting the confidential records of nonunit employees." The hospital's offer of providing only some attendance records did not allow the union to "ascertain whether the contracts were evenly applied" because the union simply does not know whether the partial attendance records it receives from the hospital are representative of all the non-unit employees. Accordingly, the hospital committed an unfair labor practice when it refused to bargain with the union concerning the best manner for the union to determine whether the hospital was complying with the contract. In my opinion, with that refusal, the hospital refused to bargain with the union and committed an unfair labor practice and I would enforce the Board's order on this issue.