33 F.3d 55
 147 L.R.R.M. (BNA) 2128
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
HERITAGE FIRE PROTECTION, INC., Respondent.
 No. 93-5905.
 United States Court of Appeals, Sixth Circuit.
 Aug. 23, 1994.
 
 Before: GUY and BOGGS, Circuit Judges; and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 The National Labor Relations Board ("the Board") seeks enforcement of its June 8, 1992 Decision, Order and Direction. We grant the Board's application for enforcement for the following reasons.
 
 I.
 
 2
 Heritage Fire Protection, Inc. ("Heritage"), fabricates, installs and repairs sprinkler systems. Heritage was founded by Kevin Cleveland, Claude Hutchison and Phillip Hutchison ("Hutchison"), all former employees of Patton Construction Company. Heritage hired three experienced installers, including Mark Bussey, from Patton Construction to work as rotating foremen (meaning that each would serve as foreman, on occasion, and installer, on occasion).
 
 
 3
 On December 11, 1989, Heritage contracted to install sprinkler systems in the Morgantown (West Virginia) Mall. Bussey was named foreman of the project. Work on the Morgantown Mall project began in January, 1990. On April 23, Bussey contacted Jerry Singleton, a representative of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, Local 689 ("the Union"), to discuss possible unionization of Heritage's field installers. Four Heritage employees attended a meeting with Singleton the following day, and three signed authorization cards: Bussey, James Adams and Duncan Smith.
 
 
 4
 On May 8, 1990, the Union filed a petition with the Board to represent Heritage's field employees. On May 10, Hutchison asked Bussey to identify the pro-union field installers. Bussey identified Tice Shelton, Warren St. Clair and Greg Sigler as the pro-union employees though all three, in fact, opposed unionization. Later that day, Hutchison accused the three employees of instigating the drive for union representation. The three employees denied Hutchison's accusations and identified Bussey as the employee leading the organizing effort. Shortly thereafter, Hutchison asked a job applicant how he felt about unionization, and told the applicant that, as far as he was concerned, Heritage would never be unionized.
 
 
 5
 On May 17, Hutchison transferred pro-union employee Adams, an experienced field installer, from the Morgantown Mall project to Heritage's Cannonsburg (Kentucky) headquarters without explanation. When anti-union employee Shelton asked if he too could obtain a transfer to Cannonsburg, Hutchison refused without explanation. Days later, pro-union installer Smith was transferred from the Morgantown Mall project to Cannonsburg. Prior to these moves, Heritage had never transferred an installer from the field back to Cannonsburg, its training facility. On May 24, Heritage transferred Bussey from the Morgantown Mall project to another installation assignment.
 
 
 6
 On June 1, Heritage interviewed applicants for two positions on the Morgantown Mall project. Hutchison explained to the applicants that a union election would take place that month, and that it would be to their advantage to vote against unionization because they lacked seniority. Two applicants were hired that same day to ensure that they would be eligible to vote in the election. On June 4, Heritage discharged Bussey for, purportedly, mishandling the Morgantown Mall installation.
 
 
 7
 The Board conducted the field employees' unionization election on June 29. Two votes were cast for the Union, four votes against, and there were six challenged ballots. Of the six challenged ballots, the Board ordered two ballots counted and two not counted--the parties did not object. At issue are the two remaining ballots (Terry Osborne and Bussey) that the Board ordered counted.
 
 
 8
 On July 2, Smith (who had served as the Union's observer at the election) was informed by Kevin Cleveland that he was being laid off. Though Smith was eventually recalled, he suffered an injury days later and was not recalled thereafter. On July 9, Adams was laid off. Though Heritage offered Adams temporary employment later that month, Adams refused the offer.
 
 
 9
 On December 26, 1991, an administrative law judge held:
 
 
 10
 3. By forcibly interrogating an employee regarding his union sympathies and by threatening employees with loss of employment if they voted for the Union, Respondent violated section 8(a)(1) of the Act.
 
 
 11
 4. By discharging employee Mark Bussey and laying off employees Duncan Smith and James Adams because they engaged in union activities, Respondent violated section 8(a)(3) and (1) of the Act.
 
 
 12
 ....
 
 
 13
 7. The challenges to the ballots of Michael Kincaid, Jeff White, Terry Osborne and Mark Bussey are invalid and must be overruled.
 
 
 14
 8. The challenges to the ballots of Stephen Conn and Michael Wilks are valid and must be sustained.
 
 
 15
 ....
 
 
 16
 Respondent, Heritage Fire Protection, Inc., its officers, agents, successors and assigns, shall:
 
 
 17
 1. Cease and desist from discouraging membership in, activities on behalf of or sympathies towards [the Union] or any other labor organization....
 
 
 18
 2. Take the following affirmative action[s] designed to effectuate the policies of the Act:
 
 
 19
 (a) Make Mark Bussey, Duncan Smith and James Adams whole for any loss of pay suffered[.]
 
 
 20
 (b) Offer to Mark Bussey, Duncan Smith and James Adams immediate and full reinstatement to their former jobs [or] to substantially equivalent positions, without prejudice to their seniority or other rights and privileges.
 
 
 21
 ....
 
 
 22
 (f) Notify the Regional Director for Region 9, in writing, within 20 days from the receipt of this Decision what steps the Respondent has taken to comply herewith.
 
 
 23
 ALJ's Decision at 25-28.
 
 
 24
 On June 8, 1992, the Board concluded that Heritage had violated 29 U.S.C. Sec. 158(a)(1), section 8(a)(1) of the National Labor Relations Act ("Act"), by threatening and interrogating employees, and that Heritage had violated 29 U.S.C. Secs. 158(a)(3) and (1), sections 8(a)(3) and (1) of the Act, by terminating Bussey, Adams and Smith:
 
 
 25
 The National Labor Relations Board adopts the recommended Order of the administrative law judge and orders that [Heritage], its officers, agents, successors, and assigns, shall take the action set forth in the Order.
 
 
 26
 IT IS DIRECTED that the Regional Director for Region 9 shall ... open and count the ballots cast by Michael Kincaid, Jeff White, Terry Osborne, and Mark Bussey.... In the event that the Union received a majority of the votes cast according to the revised tally, the Regional Director shall issue a certification of representat[ion]. In the event that the Union did not receive a majority of the votes cast according to the revised tally, it is further directed that the election conducted on June 29, 1990, is set aside and that a new election be conducted....
 
 
 27
 Board's Decision, Order and Direction at 1-2.
 
 
 28
 On July 6, 1993, the Board filed an "Application for Enforcement of an Order of the National Labor Relations Board" with this court.
 
 II.
 Standard of Review
 
 29
 The Board's findings of fact must be upheld if they are supported by substantial evidence. Universal Camera Corp. v. NLRB, 340 U.S. 474 (1951). "The Board's application of the law to particular facts is also reviewed under the substantial evidence standard." East Tennessee Baptist Hosp. v. NLRB, 6 F.3d 1139, 1143 (6th Cir.1993). "The Board's reasonable inferences may not be displaced on review even though the reviewing court might have reached a different conclusion had it considered the matter de novo." Id. (citations omitted). A reviewing court must, however, set aside Board decisions which rest on an "erroneous legal foundation." Id. (citation omitted).
 
 Heritage's Opposition to Unionization
 
 30
 Section 8(a)(3) of the Act, 29 U.S.C. Sec. 158(a)(3), proscribes "discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization[.]" "A section 8(a)(3) violation consists of 'a discharge or other adverse action that is based in whole or in part on antiunion animus' or, alternately worded, section 8(a)(3) is violated if 'the employee's protected conduct [is] a substantial or motivating factor in the adverse action.' " NLRB v. Vemco, Inc., 989 F.2d 1468, 1476-77 (6th Cir.) (quoting NLRB v. Transportation Management Corp., 462 U.S. 393, 401 (1983)), amended by 997 F.2d 1149 (1993).
 
 
 31
 In Birch Run Welding & Fabricating, Inc. v. NLRB, 761 F.2d 1175 (6th Cir.1985), this court held:
 
 
 32
 In a case involving lay-offs, the General Counsel must prove that anti-union animus partially motivated or contributed to the lay-off decision. If this prima facie case is established, then the employer must show by a preponderance of the evidence that the employees would have been laid-off even if they had not engaged in protected activity.
 
 
 33
 Id. at 1179 (citations omitted). An employer's stated reasons must be rejected if deemed pretextual in light of the circumstances surrounding the employer's actions. See generally Gatliff Coal Co. v. NLRB, 953 F.2d 247, 251 (6th Cir.1992) ("[U]nlawful discharge can be proved by circumstantial evidence warranting an inference of unlawful motivation. This is particularly true in cases such as this where employers will not readily admit discharge was due to engagement in protected concerted activities.") (citations omitted).
 
 
 34
 The record reveals that Bussey, an experienced installer, was discharged shortly after he initiated the campaign to unionize Heritage's field installers. The record reveals that Heritage did not criticize Bussey's handling of the Morgantown Mall project until it learned of Bussey's unionization activities. Shortly thereafter, Heritage discharged Bussey. The Board properly noted that "[t]he sudden change in attitude towards Bussey's fitness for employment, coincident with the Company's learning about his union activity [is] telling evidence of the anti-union motive behind Bussey's discharge." Petitioner's Brief at 16.
 
 
 35
 Heritage now argues that Bussey was not protected from employer retaliation by the Act because he was a supervisor. See 29 U.S.C. Sec. 152(3) ("any individual employed as a supervisor" is not protected by the Act). The Act defines a "supervisor" as
 
 
 36
 any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.
 
 
 37
 29 U.S.C. Sec. 152(11).
 
 
 38
 "The exclusion of supervisors from coverage under the Act was considered essential to allow employers to have the undistracted allegiance of employees in key positions." Health Care & Retirement Corp. of Am. v. NLRB, 987 F.2d 1256, 1259 (6th Cir.1993) (citation omitted), affirmed, 114 S.Ct. 1778 (1994). However, "it is important for the Board not to construe supervisory status too broadly, for a worker who is deemed to be a supervisor loses his organizational rights." Williamson Piggly Wiggly v. NLRB, 827 F.2d 1098, 1100 (6th Cir.1987) (citation omitted). Because of its special expertise, the Board "is afforded broad discretion in determining whether an employee is a 'supervisor.' " Id. (citations omitted). "In reviewing the Board's discretionary determination, we will affirm provided there has been no abuse of discretion, and provided the Board's findings of fact are supported by substantial evidence in the record when considered as a whole." Id. (citations omitted).
 
 
 39
 Though Bussey served as the foreman on the Morgantown Mall project, the record reveals that Bussey lacked the authority to hire, fire, lay-off, suspend, discipline, schedule vacations, promote, recall or transfer employees, adjust grievances, or effectively recommend any of these actions. These decisions were made by Hutchison and communicated directly to the employees without consulting Bussey. Indeed, Bussey's tasks were generally ministerial: he filled out daily job reports, attended weekly safety meetings, was responsible for cleanup, policed the area to ensure that employees followed safety regulations, recorded the employees' hours, recorded sprinkler line progress, and listed materials needed for the job. Accordingly, we find the Board's decision to be supported by substantial evidence. See Highland Superstores, Inc. v. NLRB, 927 F.2d 918, 923 (6th Cir.1991) ("Our job is simply to determine whether there was substantial evidence to support the Board's resolution of that question.").
 
 
 40
 Heritage transferred Smith and Adams to its Cannonsburg headquarters (after identifying them as union proponents) to prevent them from voting in the election. Shortly thereafter, Heritage terminated the two installers for, ostensibly, lack of work though Hutchison concomitantly cancelled employee vacations and hired new installers to keep up with the workload. Though Heritage now argues that Adams is not entitled to reinstatement because he rejected an offer to return to work, the record reveals that Heritage offered Adams a temporary job lasting days or, perhaps, weeks. Adams opted instead for permanent employment elsewhere. Because Heritage's offer of temporary employment was not "substantially equivalent" to Adams' former position, Adams did not waive reinstatement by declining Heritage's offer. See NLRB v. Seligman & Assocs., Inc., 808 F.2d 1155, 1160 (6th Cir.1986) ("[A]n employer must offer unfairly discharged employees their former positions or substantially similar ones[.]"), cert. denied, 484 U.S. 1026 (1988).
 
 III.
 
 41
 We GRANT the Board's application for enforcement for the foregoing reasons.[1]
 
 
 
 [1]
 Because Heritage failed to contest the Board's findings that it violated the Act by questioning employees regarding their union sympathies and by threatening employees with loss of employment if they voted for the Union, we need not address these claims. See Hyatt Corp. v. NLRB, 939 F.2d 361, 368 (6th Cir.1991) ("If a company fails to address or take issue with the Board's findings and conclusions with regard to violations of the Act, then the company has effectively abandoned the right to object to those determinations.")