65 F.3d 169
 150 L.R.R.M. (BNA) 2192
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
PAGE LITHO, INC., Petitioner/Cross-Respondent,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent/Cross-Petitioner,
Graphic Communications International Union, Detroit-Toledo
Local 289, AFL-CIO-CLC, Intervenor.
 Nos. 93-5947, 93-6075.
 United States Court of Appeals, Sixth Circuit.
 Aug. 28, 1995.
 
 Before: KENNEDY and SILER, Circuit Judges; and CHURCHILL, Senior District Judge.*
 PER CURIAM.
 
 
 1
 The National Labor Relations Board petitions for enforcement and the employer, Page Litho, Inc., petitions for review of the Board's order finding that the employer engaged in unfair labor practices during the bargaining process and in implementing its final offer in the absence of impasse.
 
 
 2
 The Board found that the Company violated section 8(a)(5) by refusing to provide information regarding its proposed alternative Health and Welfare Plan, that good faith impasse had not been reached and that the threat to implement its last proposal when the parties were not at impasse violated section 8(a)(5). The Board also found that the Company implemented its final proposal a few days after the strike and that it violated the Act by refusing to supply information regarding names and payroll records of strike replacements. The Board concluded that the employees were unfair labor practice strikers and that all striking employees who offered unconditionally to return to work on January 18, 1990 were entitled to reinstatement with backpay. We uphold findings of the National Labor Relations Board if they are supported by substantial evidence on the record as a whole. Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); NLRB v. H & H Pretzel Co., 831 F.2d 650, 653 (6th Cir.1987). Evidence is substantial if "it is adequate to a reasonable mind to uphold the decision." NLRB v. Brown-Graves Lumber Co., 949 F.2d 194, 196 (6th Cir.1991) (Universal Camera, 340 U.S. at 477, 488). We do not displace inferences reasonably found by the Board from facts, even if we might have reached a different conclusion had we considered the matter de novo. Highland Superstores, Inc. v. NLRB, 927 F.2d 918 (6th Cir.1991).
 
 
 3
 Substantial evidence supports the Board's findings. We recognize that part of the reason the Company could not provide complete information was because the Union instructed its members not to fill out the forms necessary to obtain prices, a fact which the Union admits. The Company did, however, have preliminary information regarding its Health and Welfare Plan which it refused to disclose. The Board's finding that good faith impasse had not been reached is supported by the above refusal, the false denial that want ads for replacement workers had been placed, and the constantly corrected or changed final offers.
 
 
 4
 The Board's finding that the Company implemented its final offer when it hired a returning striker is supported by the Company's own records. We disagree, however, with the Board's holding that the Company violated section 8(a)(5) of the Act by refusing to provide names and payroll information for replacement employees to the Union. The Board asks us to uphold the portion of its order requiring the Company to provide the names. The Company refused to provide the names of the replacements because strikers were harassing the replacements. The Company argues that it fulfilled its duty to provide the Union with information about the replacements when it offered to provide the names to a neutral third party and provided the Union with redacted payroll records.
 
 
 5
 "The general rule that a union is entitled to information relevant to the bargaining process depends on the circumstances of each case." E.W. Buschman Co. v. NLRB, 820 F.2d 206, 208 (6th Cir.1987). In Buschman, the union requested detailed financial information from a company after the company stated that it could not pay its traditional Christmas bonus because of cash flow problems. Id. at 207-08. The company offered to provide the information to the union in exchange for a confidentiality agreement and the Board found this to be a refusal to bargain in good faith. We denied enforcement, holding that "an unfair labor practice charge is not made out where a company offers a facially reasonable accommodation in a situation involving the release of allegedly confidential information, and where no finding is made that the conditions offered were unreasonable or were only a pretext for a refusal to advance the bargaining process." Id. at 209.
 
 
 6
 Likewise, in East Tennessee Baptist Hospital. v. NLRB, 6 F.3d 1139 (6th Cir.1993), the union requested job information concerning employees in a unit not represented by the union because the labor contract required equal wage treatment for unit and nonunit employees. The company informed the union that such information was confidential, but suggested that a neutral third party be hired to review the records and report if there were violations of the collective bargaining agreement. The Board again found this to be an unfair labor practice. We disagreed with the Board's conclusion that "the [company's] refusal to disclose the requested records in the form and manner demanded by the [u]nion constituted a failure to bargain." Id. at 1143-44 (emphasis in original). We noted that the Company's alternative was reasonable and held that "[p]resentation of bona fide concerns by the Company, coupled with reasonable proposals designed to satisfy the needs of the union and to achieve a mutually satisfactory resolution of the union request, is simply not a refusal to bargain." Id. at 1144-45 (citation omitted). We held that once a company raises a concern about confidentiality we require the union to "demonstrate that its need for the materials outweigh[s] the [company's] interest in maintaining the confidentiality of the records." Id. at 1144.
 
 
 7
 In the present case, the Company expressed a bona fide concern that its replacement workers would be harassed. The Union has failed to show that its need for the names outweighs the company's interest in keeping them confidential. Furthermore, the Company presented the Union with reasonable proposals which would meet the Union's need for information. Even if the payroll records with the names deleted were "unintelligible," as the Board found, providing the records to a third party would have provided the Union with the information it sought. The Board did not find that the Company's request was a pretext for refusing to bargain and the Company appears to have been willing to cooperate with the Union as long as the employee names were not revealed.
 
 
 8
 The Board relied on Chicago Tribune Co., 303 NLRB 682 (1991) where the Board found that an employer's delay in providing the names of strike replacements for over a year violated the Act, despite the employer's alleged fear that replacements would be harassed. However, the Seventh Circuit reversed the Board, relying on our decision in Buschman, 820 F.2d at 206. See Chicago Tribune Co. v. NLRB, 965 F.2d 244, 247 (7th Cir.1992). The Seventh Circuit stated that "[t]he company ... was offering the union alternatives to the names that ... were completely adequate. The union's unexplained refusal to accept either alternative suggests that it wanted the names not necessarily to harass the replacement workers directly but perhaps to do so indirectly by giving them an additional source of anxiety." Id. at 247.
 
 
 9
 Here, the Board contends that in May 1990, the strike had been over for four months and so the employer was no longer acting reasonably in refusing to provide the names of the replacement employees. The Board in its decision attempts to distinguish Chicago Tribune by stating that in Chicago Tribune "the employer offered reasonable alternatives for satisfying the union's ultimate informational objectives of ascertaining striker reinstatement rights." Page Litho Inc., 311 NLRB 881, 882-83 (1993).[2] However, the Company did this here. The Union wanted payroll information from the Company in order to monitor vacancies among strike replacements and the Company offered to have this monitoring conducted by a third party. For this reason, we will deny enforcement of that portion of the Board's order requiring the Company to provide the names of the strike replacements.
 
 
 10
 The Company argues that the Board erred in reversing the ALJ's determination that backpay should be tolled on April 18, 1990. The Board found that it was premature for the ALJ to establish the date tolling backpay because during the hearing the ALJ had ruled that the issue of whether backpay should be tolled was better left to the compliance stage. (Joint App. 2375-76). Because of this ruling, the parties were not able to fully address this obviously contested issue at the hearing. The Board thus did not err in requiring the ALJ to conduct further proceedings.
 
 
 11
 Accordingly, we grant the Company's petition for review with respect to the names of replacement workers and deny it in all other respects. We grant the Board's cross-application for enforcement except with respect to the holding that the Company committed an unfair labor practice in withholding the names of replacement workers.
 
 
 
 *
 The Honorable James P. Churchill, United States Senior District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [2]
 The Board argues that a "clear and present danger" test should be applied in determining whether a union will misuse the names of strike replacements, entitling the Company to withhold them. The Seventh Circuit in Chicago Tribune, 965 F.2d at 246-47, explicitly rejected this test. Neither Buschman nor East Tennessee suggests that this test is followed in this Circuit