107 Pa. Commonwealth Ct. 132 (1987)
527 A.2d 1097
Commonwealth of Pennsylvania, Petitioner
v.
Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board, Respondent.
No. 1694 C.D. 1986.
Commonwealth Court of Pennsylvania.
Argued April 22, 1987.
June 26, 1987.
Argued April 22, 1987, before President Judge CRUMLISH, JR., Judges CRAIG, MacPHAIL, DOYLE, BARRY, COLINS and PALLADINO.
*133 Steven O. Newhouse, Assistant Counsel, with him, John D. Raup, Chief Counsel, for petitioner.
James L. Crawford, with him, Arlene F. Klinedinst, John B. Neurohr and Richard C. Lengler, for respondent.
Steven A. Stine, with him, William Fearen, Cleckner and Fearen, for intervenor, The Pennsylvania Nurses Association.
OPINION BY PRESIDENT JUDGE CRUMLISH, JR., June 26, 1987:
The Commonwealth of Pennsylvania, Department of Public Welfare (Commonwealth), appeals the final order of the Pennsylvania Labor Relations Board (Board) upholding a hearing examiner's proposed decision and order which concluded that the Commonwealth had committed unfair labor practices in violation of Section 1201(a)(5) of the Public Employe Relations Act (PERA).[1]
The unfair labor practice charge stemmed from the Commonwealth's refusal to provide the Pennsylvania *134 Nurses Association (PNA) with information it had requested to assist in the processing of grievances filed by William Pannacci, a union member.
Pannacci, a pharmacist at Clarks Summit State Hospital, filed four separate grievances alleging improper personnel promotions,[2] unilateral changes in the pharmacy's hours of operation and work schedules,[3] and a discriminatory performance evaluation.[4]
When the Commonwealth declined to provide the requested information for grievance arbitration, the PNA filed the instant complaint alleging that the Commonwealth was violating its duty to bargain in good faith. The hearing examiner found that the PNA set forth a cause of action which was not appropriate for deferral pending the grievance arbitration and ordered the Commonwealth to provide the PNA with the requested information.[5] The Board affirmed the examiner's decision but modified it to eliminate certain information requests.
*135 Our scope of review is limited to a determination of whether the factual findings of the Board were supported by substantial evidence and its conclusions of law were reasonable. Repko v. Pennsylvania Labor Relations Board, 99 Pa. Commonwealth Ct. 289, 513 A.2d 518 (1986).
The Commonwealth contends that the Board's order must be set aside because the Board abused its discretion by refusing to defer consideration of the information requests until settlement of the underlying arbitration grievances. It argues that deferral would have protected the Commonwealth from unnecessarily disclosing information in cases of frivolous claims. We disagree.
We note at the outset that when no meaningful difference exists between established policies of the PERA and the National Labor Relations Act (NLRA),[6] we look to federal decisions for guidance. Burse v. Pennsylvania Labor Relations Board, 56 Pa. Commonwealth Ct. 555, 425 A.2d 1182 (1981). The similar language and purposes of Section 1201(a)(5) of PERA and Section 158(a)(5) of NLRA permits us to be guided by federal decisions in interpreting PERA.
Courts of federal jurisdiction have dealt with issues of discovery in the processing of arbitration grievances and have found that state employers have a duty to furnish information which would enable unions to make informed decisions about whether to pursue such grievances. See, e.g., San Diego Newspaper Guild v. National Labor Relations Board, 548 F.2d 863 (9th Cir. 1977). Furthermore, the duty to provide information has been said to be a statutory obligation which exists independent *136 of the agreement between the parties. National Labor Relations Board v. Designcraft Jewel Industries, Inc., 675 F.2d 493 (2d Cir. 1982). We believe Section 1201(a)(5) of PERA creates a similar statutory obligation. As in National Labor Relations Board v. Acme Industrial Co., 385 U.S. 432 (1967), where the Supreme Court held that unions were entitled to reasonable discovery of relevant materials in order to make an intelligent evaluation of the merits of the underlying claim, it is clear that the PNA must be allowed to obtain relevant information in order to perform its duties as specified in the parties' collective bargaining agreement (agreement).
The Commonwealth next contends that the Board erred by requiring it to furnish the PNA with information concerning non-unit employees who are not covered by the agreement. The Commonwealth argues that this information is not relevant to the PNA's duty to "police" the agreement. We disagree.
The Supreme Court in Acme stated that relevancy should be determined under a discovery-type standard wherein the courts of necessity must follow a more liberal standard as to relevancy.[7] Further, since the PNA is seeking information in connection with its pursuit of grievances, the Board need only find: (1) that the union is advancing a grievance which on its face is governed by the parties' agreement, and (2) that the information will be useful to the union. Acme at 437.
Here, Pannacci's grievances against his supervisor and the Administrative Director were brought under agreement Articles 28 and 36, which prohibit employment discrimination and govern managerial rights, respectively.[8] *137 It is not required that the PNA show that it will succeed on the merits of these grievances but only that its request for information is factually relevant to the grievants' demand.[9] In addition, by producing evidence suggestive of bad faith, the PNA has satisfied the liberal standard of relevancy, thereby entitling it to the requested information. Curtiss-Wright Corp. v. National Labor Relations Board, 347 F.2d 61 (3d Cir. 1965). We hold, therefore, that since the grievances on their faces are subject to the PNA's contract and demonstrate a need for the requested information, the Board did not err in ordering the Commonwealth to produce the information on non-bargaining unit employees.
The Commonwealth's final contention that the Board erred by requiring it to reduce to writing its reasons for particular managerial decisions which are not currently in written form is also without merit.
In Curtiss-Wright Corp., the Third Circuit Court of Appeals held that information pertaining to employees is presumptively relevant. Under the federal statutes, there is an obligation for an employer to make a diligent effort to obtain presumptively relevant information sought by the union.[10]National Labor Relations Board v. Borden, Inc., 600 F.2d 313 (1st Cir. 1979).
Here, the relevance of the requested information is beyond dispute. It goes to the heart of Pannacci's performance evaluation and to the reason behind the *138 changes in operations which are at issue in the underlying grievances. Moreover, the Board found that some of the requested information can be gleaned from existing internal memoranda on personnel actions. The PNA's inquiries to the Commonwealth are in the nature of interrogatory discovery requests and can be answered objectively. Therefore, it was not unreasonable for the Board to conclude that due diligence required the Commonwealth to reduce to writing the reasons for the particular administrative decisions.
Accordingly, we hold that the Commonwealth committed unfair practices in violation of Section 1201(a)(5) of the Act by failing to provide the requested information.
We affirm the final order of the Board.

ORDER
The final order of the Pennsylvania Labor Relations Board, No. PERA-C-85-152-E dated May 6, 1986, is affirmed.
NOTES
[1] Act of July 23, 1970, P.L. 563, as amended, 43 P.S. §1101.1201(a)(5), which reads:

(a) Public employers, their agents or representatives are prohibited from:
. . . .
(5) Refusing to bargain collectively in good faith with an employe representative which is the exclusive representative of employes in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representatives.
[2] Pannacci challenged the appointment of Richard O'Dea to the managerial position of administrative director of the hospital's pharmacy and the selection of Ms. Yadouga, instead of Mr. Pannacci, to serve in the first-level supervisory position of chief pharmacist.
[3] Pannacci challenged the change in hours of operation at the pharmacy wherein the new chief pharmacist would be working from 8:00 a.m. to 4:00 p.m. Monday through Friday; and he and the other pharmacist would have to choose between 9:00 a.m. to 5:00 p.m. or 10:00 a.m. to 6:00 p.m. weekdays and would also have to cover every other weekend from 9:00 a.m. to 5:00 p.m.
[4] Pannacci challenged his 1984 performance evaluation which noted, inter alia, that he had difficulty (1) getting along with his co-workers; (2) sharing duties; and (3) following directions and assignments.
[5] The Board ordered the Commonwealth to produce discovery information pertaining to, inter alia, (1) the O'Dea grievance; (2) the Yadouga grievance; (3) the Pharmacy hours/work schedule grievance; and (4) his performance evaluation grievance. The PNA requested information on the basic reasons behind the various managerial changes instituted in the Pharmacy.
[6] 29 U.S.C. §§151  168 (1973).
[7] The same is true for the Labor Relations Board, which must make the initial determination as to whether the discovery request is relevant.
[8] Articles 28 and 36 of the Collective Bargaining Agreement between the Commonwealth and the PNA, effective July 1, 1983, to June 30, 1985, prohibit any kind of discrimination in the work place and permit the Commonwealth to make management decisions within its "sound discretion."
[9] United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564 (1960).
[10] The PNA has requested objective, known information relevant to the processing of the grievances.