541 A.2d 1168

Commonwealth of Pennsylvania, Department of Corrections, State Correctional Institution at Muncy, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board, Respondent.

Submitted on briefs April 19, 1988, to President Judge CRUMLISH, JR., and Judge McGINLEY, and Senior Judge NARICK, sitting as a panel of three.

*Nathan C. Pringle,* Assistant Counsel, with him, *John D. Raup,* Chief Counsel, for petitioner.

*James L. Crawford,* with him, *Arlene F. Klinedinst,* for respondent.

*Gary R. Gordon, Kirschner, Walters & Willig,* for intervenor, American Federation of State, County and Municipal Employees, Council 13.

OPINION BY SENIOR JUDGE NARICK, May 26, 1988:

The instant matter involves an appeal by the Commonwealth of Pennsylvania, Department of Corrections (Commonwealth) from a decision of the Pennsylvania Labor Relations Board (Board). We affirm.

John Larkin (Grievant) who was employed by the State Correctional Institution at Muncy (Muncy) was suspended pending an investigation regarding disciplinary charges which had been filed against him. On October 17, 1985, a pre-disciplinary administrative hearing was held and at this hearing Grievant was represented by the American Federation of State, County and Mu-

nicipal Employees (AFSCME).[1] A request was made to the Commonwealth by AFSCME to identify certain witnesses the Commonwealth had referred to at the October 17, 1985 hearing. The Commonwealth refused this request.

On October 25, 1985, AFSCME filed a charge of unfair labor practices with the Board alleging that the Commonwealth was in violation of Sections 1201(a)(1) and (5) of the Public Employe Relations Act (Act),[2] Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§1201(a)(1) and (5).[3] The Board, *inter alia,* directed the Commonwealth to disclose the identification of witnesses which had previously only been identified by number at the October 17, 1985 hearing. The Commonwealth appealed to this Court.

The sole issue before us is whether the Commonwealth was obligated to identify witnesses.[4]

It is the function of the Board to appraise conflicting evidence, determine credibility of witnesses and to draw inferences from established facts and circumstances. *Appeal of Cumberland Valley School District,*

---

[1] AFSCME is an intervening party in the instant matter.

[2] The Act is also known as Act 195.

[3] Section 1201 of the Act relevantly provides:

(a) Public employers, their agents or representatives are prohibited from:

(1) Interfering, restraining or coercing employes in the exercise of the rights guaranteed in article IV of this act.

. . . .

(5) Refusing to bargain collectively in good faith with an employe representative which is the exclusive representative of employes in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative. (Footnote omitted.)

[4] The Commonwealth indicates in its brief that although other issues were raised in its petition for review, it is now only appealing that portion of the Board's order requiring the identification of witnesses with respect to Grievant's case.

483 Pa. 134, 394 A.2d 946 (1978). Our scope of review of a Board decision is limited to determining whether there has been a constitutional violation or an error of law, and whether the findings of fact are supported by substantial evidence. *Harbaugh v. Pennsylvania Labor Relations Board,* 107 Pa. Commonwealth Ct. 406, 528 A.2d 1024 (1987).[5]

Our Court recently stated in *Commonwealth v. Pennsylvania Labor Relations Board,* 107 Pa. Commonwealth Ct. 132, 527 A.2d 1097 (1987) that when there is no meaningful difference between the Act and the National Labor Relations Act (NLRA),[6] it is appropriate to look to federal case law for guidance. The Court went on to say that the similar language and purposes of Section 158(a)(5) of the NLRA[7] and Section 1201(a)(5) of the Act allows for us to be guided by federal case law in interpreting the Act.

In the *Pennsylvania Labor Relations Board* case, certain discovery information was requested by the grievant, but the Commonwealth refused to disclose the information. This Court in concluding that Section 1201(a)(5) of the Act creates a statutory obligation in employers to furnish relevant information reasoned:

---

[5] Thus, our appellate review is limited and we will not lightly substitute our judgment for that of the Board's, whose experience and expertise make it better qualified than a court of law to weigh facts within its field. *Cumberland Valley School District,* 483 Pa. at 139-140, 394 A.2d at 949.

[6] 29 U.S.C. §§151-168 (1973).

[7] It is provided in Section 158(a)(5) of the NLRA, 29 U.S.C. §158(a)(5) as follows:

(a) It shall be unfair labor practice for an employer—

. . . .

(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.

Courts of federal jurisdiction have dealt with issues of discovery in the processing of arbitration grievances and have found that state employers have a duty to furnish information which would enable unions to make informed decisions about whether to pursue such grievances. See, e.g., San Diego Newspaper Guild v. National Labor Relations Board, 548 F.2d 863 (9th Cir. 1977). Furthermore, the duty to provide information has been said to be a statutory obligation which exists independent of the agreement between the parties. National Labor Relations Board v. Designcraft Jewel Industries, Inc., 675 F.2d 493 (2d Cir. 1982). We believe Section 1201(a)(5) of PERA [the Act] creates a similar statutory obligation. As in National Labor Relations Board v. Acme Industrial Co., 385 U.S. 432 [87 Supreme Ct. 565, 17 L.Ed. 2d 495] (1967), where the Supreme Court held that unions were entitled to reasonable discovery of relevant materials in order to make an intelligent evaluation of the merits of the underlying claim, it is clear that the PNA [the union] must be allowed to obtain relevant information in order to perform its duties as specified in the parties' collective bargaining agreement (agreement).

*Id.* at 135, 527 A.2d at 1099.

The Board must make the initial determination as to whether a request for information is relevant, *Pennsylvania Labor Relations Board*. The Board's determination of relevancy in a particular case is given great weight by the courts either because it is a finding of fact or a mixed question of law and fact which is within the particular expertise of the Board. *San Diego Newspaper Guild*.

In determining whether a union has made a request for relevant information, a liberal standard has been adopted. *See Pennsylvania Labor Relations Board.* In order to succeed in its request for information, a party need only show that its request is factually relevant to the grievant's case. *Id.* In the matter herein, Grievant was suspended from his job pending investigation.[8] The information requested by AFSCME was names of witnesses who had given statements against Grievant. Clearly, this information went to the crux of the Commonwealth's case against Grievant; and the Commonwealth's refusal to provide this information was in violation of the Act.

Support for our determination here is *Transport of New Jersey,* 233 N.L.R.B. 694, 97 L.R.R.M. 1204 (1977) where an employer refused to disclose to the union the names and addresses of passenger-witnesses to a bus accident which resulted in discipline to the grievant bus driver. In support of its position, the employer claimed that its decision to discipline was based solely on the bus driver's account of the accident and the surrounding circumstances. In rejecting employer's argument, the National Labor Relations Board (NLRB) noted that an employer has a duty to furnish a union information relevant and necessary to enable it to intelligently carry out its statutory obligations and that under the standard of relevancy, it is sufficient that the union's request for information be supported by a showing of probable or potential relevance. The NLRB concluded that the information was relevant to the issues raised by the union's grievance and that the employer's failure to disclose this information was in violation of the NLRB. *Transport of New Jersey* was upheld in *An-*

---

[8] The record does not clearly establish whether or not Grievant was actually discharged.

*heuser-Busch, Inc.,* 237 N.L.R.B. 982, 99 L.R.R.M. 1174 (1978).

With respect to the Commonwealth's argument that the identification of these witnesses who made statements against Grievant would expose these witnesses to harassment, intimidation or coercion, we disagree. More specifically, the Commonwealth asserts that witnesses who are inmates or staff in state prisons are particularly vulnerable to retaliation and in support of its position produced testimony regarding two incidences of retaliation against witnesses which had apparently occurred during a five year period at Muncy. However, no evidence was produced that the circumstances of this particular case were likely to result in harassment, intimidation or coercion of witnesses. Thus, we must agree with the Board's conclusion that the dangers suggested by the Commonwealth were speculative and were not sufficient reason for refusing to disclose the information.[9]

Accordingly, the order of the Board is affirmed.

ORDER

AND NOW, this 26th day of May, 1988, the order of the Pennsylvania Labor Relations Board in the above-captioned matter is affirmed.

---

[9] A similar argument was presented by the employer in *Transport of New Jersey* and was rejected.