**F I L E D**

PUBLISH

**August 9, 2005**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

NORRIS, A Dover Resources
Company,

      Petitioner - Cross-
      Respondent,

v.

NATIONAL LABOR RELATIONS
BOARD,

      Respondent - Cross-
      Petitioner.

Nos. 03-9597 and 03-9608

---

PETITION FOR REVIEW OF
DECISION OF THE NATIONAL LABOR RELATIONS BOARD
(CASE NO. 17-CA-21436)

---

W. Kirk Turner (Keith A. Wilkes with him on the brief), of Newton, O'Connor,
Turner & Ketchum, P.C., Tulsa, Oklahoma, for Petitioner - Cross-Respondent.

Arthur F. Rosenfeld, General Counsel (Robert J. Englehart, Supervisory Attorney,
Jeffrey M. Hirsch, Attorney, John E. Higgins, Jr., Deputy General Counsel, John
H. Ferguson, Associate General Counsel, Aileen A. Armstrong, Deputy Associate
General Counsel, with him on the brief), National Labor Relations Board,
Washington, D.C., for Respondent - Cross-Petitioner.

Before **SEYMOUR** , **HARTZ** , Circuit Judges, and **BRACK** , District Judge [*].

---

**HARTZ** , Circuit Judge.

---

This is an unfortunate case in which a little good will from both parties to a collective bargaining agreement (CBA) would have saved everyone considerable time and expense. A steward for the United Steelworkers of America, Local Union No. 4430 (Union), requested records from Norris, a Dover Resources Company (Company). The Company had legitimate confidentiality concerns regarding the records but rejected out of hand the steward's attempt to satisfy those concerns. Rather than seeking an explanation or further negotiation, the steward then filed a charge with the National Labor Relations Board (NLRB or Board) alleging an unfair labor practice. The Board found that the Company violated § 8(a)(1) and (5) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(a)(1) and (5), by refusing to bargain in good faith. It ordered the Company to post a notice acknowledging the Union members' rights, pledging not to interfere with the exercise of those rights, and stating that it would not refuse to bargain in good faith with the Union. *Norris Sucker Rods*, 340 N.L.R.B. No. 28,

---

[*]The Honorable Robert C. Brack, United States District Judge for the District of New Mexico, sitting by designation.

2 (2003), 2003 WL 22173545, at *2.  It also ordered the Company to produce the requested records, with confidential information redacted.

The Company petitions for review and the NLRB cross-petitions for enforcement of its decision and order.  We have jurisdiction under 29 U.S.C. § 160(e) and (f).  Although we can sympathize with the Company's view that the Union, through its steward, was too quick to halt the dialogue, we must defer to the NLRB's reasonable view.  Hence, we deny the Company's petition for review and grant the NLRB's cross-petition for enforcement.

## I.  BACKGROUND

### A.  Facts

The Company, a manufacturer of steel products in Tulsa, Oklahoma, employs about 250 people.  Some 180 of them are members of a bargaining unit represented by the Union.  Under the CBA's Excessive Absentee and Tardiness provision, an employee who is late or absent for medical reasons but does not provide a doctor slip will receive "points," the accumulation of which leads to disciplinary action.

Zachary Trosky, an employee of the Company, a Union steward, and the charging party in this action, allegedly received oral complaints that the doctor-slip policy was administered unevenly.  Pursuing the allegations, on October 19, 2001, he requested from a Company nurse all the doctor slips for the previous six

months. The nurse referred him to Dan Bisett, the Company's human resources manager, who spoke with Trosky the same day. He informed Trosky that because the doctor slips included confidential medical information, they could not be released unless the Union obtained signed medical-release forms from the employees. He provided Trosky a copy of the form.

Four days later Trosky filed a grievance on behalf of a Union member alleging a violation of the CBA because of a point given for an inadequate doctor slip. Shortly thereafter he filed one on his own behalf alleging that he was improperly given a point for a previously excused absence. Trosky's grievance, unlike the first one, alleged a violation of the NLRA as well as the CBA. Both grievances were later withdrawn by Union officials.

On October 29, while both grievances were pending, Trosky left on Bisett's desk a written request for the doctor slips. It said:

> In order to prepare for a grievance I am requesting a list of the names of all employees who have had doctor slips over the past six months, and copies of each doctor slip for those employees. Doctor slips that have any medical information directly stating diagnosis, treatment, or medication given should have said information blocked out. All other information should be kept intact.

R. Vol. II at GC 4. Bisett responded the next day with the following handwritten note at the bottom of the request:

> Request denied. The Union must have signed a authorization from each ee [employee], permitting the co [Company] to release personal/medical information. You have that form in your

possession. With respect to the number of ee's [employees] presenting doctor's slip-such a task is laborious & expensive process. The co [Company] will under take such a task at the Union's expense. Kindly inform the company if you (Union) are ready to pay for it.

*Id.* Trosky did not respond to Bisett's note and the parties had no further contact regarding the request.

On November 7 Trosky filed an unfair-labor-practice charge alleging that the Company violated the NLRA § 8(a)(1), (3) and (5) because it disciplined him in retaliation for his activities as a Union steward and refused to produce information necessary and relevant to his representation of bargaining-unit employees—namely, the doctor slips. On January 30, 2002, the regional director for the NLRB issued a Complaint and Notice of Hearing charging that the Company's response to Trosky's written request for the doctor slips was a refusal to bargain collectively, in violation of NLRA § 8(a)(1) and (5).

**B. Proceedings Below**

A hearing was conducted before an administrative law judge (ALJ) on May 21, 2002. The ALJ heard testimony from Trosky, Bisett, and Michael McGahey, vice-president and shop steward of Local No. 4430. The Company objected that the request was for confidential medical information. Bisett testified that the proffered solution to confidentiality concerns—redacting references to diagnosis, treatment, or medication—was inadequate because the

doctor's name and clinical specialty were sufficient to reveal confidential medical information about the patient. The Company also objected that the request encompassed irrelevant information because it was not limited to bargaining-unit members. In addition, the Company claimed that the request was burdensome and expensive because it required reviewing and photocopying 1000 to 1500 slips. Finally, the Company asserted that the Union failed to bargain in response to the request that it pay production costs.

The ALJ found that the requested information was relevant to issues governed by the CBA because the "request was a legitimate inquiry designed to inform [the Union], through comparative analysis, if the [Company] was disparately interpreting medical slips or unfairly giving points to employees." *Norris Sucker Rods*, 340 N.L.R.B. No. 28, at 3. The ALJ also found that the Company "ha[d] not met its burden of showing that it had a legitimate and substantial interest in sheltering censored doctor's slips as confidential." *Id.* The ALJ concluded that the Company's refusal to produce the doctor slips as requested violated its duty to bargain collectively. *Id.* He ordered the Company to provide the redacted doctor slips and bargain in good faith with the Union. *Id.* at 4.

The Company filed several exceptions to the ALJ's decision and order. The exceptions reflect its contentions that the request was overbroad because it

included non-bargaining-unit employees, that the information regarding non-bargaining-unit employees was not presumptively relevant and the request did not establish relevance, that the ALJ's ruling did not adequately address the Company's legitimate confidentiality concerns, and that the Union, not the Company, refused to bargain. The Company also argued that the complaint had been filed by Trosky on his own behalf and not on behalf of the Union.

The NLRB affirmed the ALJ's decision and order, but modified it in agreement with the Company's objections based on overbreadth and confidentiality. The Board wrote:

> [W]e agree with the Respondent that the Union made no showing of relevance with respect to nonunit employees. Indeed, the record reflects that the Union intended to request the names and excuse slips of bargaining unit employees only, and did not intend for the request to encompass nonunit employees. We shall modify the judge's recommended order accordingly.
> With regard to the redacted absence excuse slips, [the Company] asserted during the hearing that, even after the Union's proposed redaction, it would be possible to discern the type of treatment provided to its employees by examining the treating physician's name. The Union did not assert any claim to the names of the treating physicians. In these circumstances, we shall require [the Company] to produce the absence excuse slips with the names of treating physicians and medical information directly stating diagnosis, treatment, or medication given redacted.

*Norris Sucker Rods*, 2003 WL 22173545, at n.1.

**C. Issues Presented for Review**

-7-

To begin with, the Company appears to raise two procedural contentions. It complains that Trosky did not file his charge with the NLRB on behalf of the Union and that he did not pursue his claims through the CBA's grievance process. Regarding the merits, the Company contends that the NLRB's decision and order is not supported by substantial evidence in the record. It points to Trosky's testimony during cross-examination that the Company never flatly refused to produce the doctor slips and that he did not continue bargaining after Bisett's response. It further argues that its refusal to provide the doctor slips in the manner requested was justified and not a refusal to bargain collectively because the request included non-bargaining-unit employees and the proposed redactions did not adequately address the Company's legitimate confidentiality concerns. The Company does not challenge the NLRB's conclusion that the doctor slips of bargaining-unit members are relevant to the Union's duty to process grievances under the CBA.

## II. DISCUSSION

### A. Standard of Review

"Although we ordinarily review questions of law *de novo*, the Board's construction of the National Labor Relations Act is entitled to considerable deference." *NLRB v. Okla. Fixture Co.*, 79 F.3d 1030, 1033 (10th Cir. 1996). "For the Board to prevail, it need not show that its construction is the *best* way to

read the statute; rather, courts must respect the Board's judgment so long as its reading is a reasonable one." *Holly Farms Corp. v. NLRB*, 517 U.S. 392, 409 (1996).

When considering a petition for review of an NLRB decision and order, "the findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall . . . be conclusive." 29 U.S.C. § 160(f). The same standard applies to the NLRB's cross-petition for enforcement. 29 U.S.C. § 160(e). And the standard applies regardless whether the NLRB affirms the ALJ's decision and order in its entirety, modifies it, or reaches contrary findings. *NLRB v. L & B Cooling, Inc.*, 757 F.2d 236, 241 (10th Cir. 1985).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Although "th[is] phrasing . . . readily len[ds] itself to the notion that it [is] enough that the evidence supporting the Board's result [is] 'substantial' when considered by itself," *Universal Camera*, 340 U.S. at 477-78, "the standard of proof required of the Labor Board by the [NLRA] is the same as that to be exacted by courts reviewing every administrative action subject to the Administrative Procedure Act." *Id.* at 487. "The substantiality of evidence must

take into account whatever in the record fairly detracts from its weight." *Id.* at 488. NLRB findings are "entitled to respect," but they must be set aside if "the record . . . clearly precludes the Board's decision from being justified by a fair estimate of the worth of the testimony of witnesses or [the Board's] informed judgment on matter within its special competence or both." *Id.* at 490.

## B. Procedural Contentions

We quickly dispose of the Company's apparent procedural contentions. First, in a footnote in its appellate brief it points out that the charge Trosky filed with the NLRB named himself, not the Union, as the charging party. But the Company fails to elaborate why that fact would have any consequences in this proceeding. The Board itself issued the complaint whose resolution is before us. Because the Company has not adequately briefed any argument it may have based on Trosky's being the charging party, we decline to pursue the matter further. *See Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1547 (10th Cir. 1995); Fed. R. App. P. 28(a)(9)(A).

Second, the Company objects that Trosky failed to seek redress through the grievance process set out in the CBA rather than immediately filing an unfair-labor-practice charge. To be sure, when a collective bargaining agreement provides for arbitration of a particular type of dispute, the NLRB may in some circumstances refrain from acting until the arbitration process has been

-10-

completed.  *See DaimlerChrysler Corp. v. NLRB*, 288 F.3d 434, 438-39 (D.C. Cir. 2002).  Nevertheless, "certain statutory rights are not subject to contractual abrogation unless the aggrieved party has clearly and unmistakenly waived the statutory rights at issue." *Id.* at 439.  In particular, "[a]n alleged refusal by an employer to furnish relevant information needed by a union for use in collective bargaining or grievance processing . . . is not subject to . . . deferment [until arbitration has been completed,] absent a clear and unmistakable waiver." *Id.* Here, the Company has provided no evidence of such a waiver.

## C.  The Merits

### 1.  The Duty to Bargain Collectively

Section 8(a)(5) of the NLRA, 29 U.S.C. § 158(a)(5), requires an employer to "bargain collectively with the representatives of his employees."  The duty to bargain is also imposed on unions.  *See* 29 U.S.C. § 158(b)(3).  This reciprocal duty includes the duty to bargain "with respect to wages, hours, and other terms and conditions of employment."  29 U.S.C. § 158(d).  Parties must bargain in good faith to comply with the statutory duty, but bad faith is not a necessary element for a breach of the duty.  *NLRB v. Katz*, 369 U.S. 736, 742-43 (1962) ("Clearly, the duty . . . may be violated without a general failure of subjective good faith; for there is no occasion to consider the issue of good faith if a party

has refused to even negotiate in fact—'to meet . . . and confer'—about any of the mandatory subjects.").

The employer's duty to bargain collectively "includes a duty to provide relevant information needed by a labor union for the proper performance of its duties as the employees' bargaining representative." *Detroit Edison Co. v. NLRB*, 440 U.S. 301, 303 (1979). Processing grievances under a CBA is one of a union's duties as a bargaining representative. *Resorts Int'l Hotel Casino v. NLRB*, 996 F.2d 1553, 1556 (3rd Cir. 1993).

The employer's duty to bargain collectively does not, however, impose an unlimited duty to produce requested information. The information must be relevant. "The test of relevancy is whether, under a liberal discovery-type standard, the information would aid the union in performing its statutory duties." *Safeway Stores, Inc. v. NLRB*, 691 F.2d 953, 956 (10th Cir. 1982). If the request is for information about bargaining-unit employees "it is presumed that the requested information is relevant . . . , and the employer must provide the information unless it can show the information is irrelevant. By contrast, the burden is on the union to demonstrate the relevance of information about nonunion employees." *United States Testing Co. v. NLRB*, 160 F.3d 14, 19 (D.C. Cir. 1998). *Accord East Tenn. Baptist Hosp. v. NLRB*, 6 F.3d 1139, 1143 (6th Cir. 1993). Nevertheless, "an employer may not simply refuse to comply with an

ambiguous and/or overbroad information request, but must request clarification and/or comply with the request to the extent it encompasses necessary and relevant information." *Keauhou Beach Hotel*, 298 N.L.R.B. 702 (1990). In short, although the union has the burden to explain why it is requesting presumptively irrelevant information at the time of the request, its failure to do so does not relieve the employer from providing any relevant information identified in the request.

> A union's bare assertion that it needs information to process a grievance does not automatically oblige the employer to supply all the information in the manner requested. The duty to supply information under § 8(a)(5) turns upon the circumstances of the particular case, and much the same may be said for the type of disclosure that will satisfy that duty.

*Detroit Edison*, 440 U.S. at 314-15 (internal quotation marks and citation omitted). In particular, when the union requests "'relevant, but assertedly confidential information, the Board is required to balance a union's need for the information against any "legitimate and substantial" confidentiality interests established by the employer.'" *Resorts*, 996 F.2d at 1556 (quoting *Pa. Power & Light Co.*, 301 N.L.R.B. 1104, 1105 (1991)). An employer asserting confidentiality "must offer to accommodate both its concern and its bargaining obligations." *United States Testing*, 160 F.3d at 20. "[T]he onus is on the

employer because it is in the better position to propose how best it can respond to a union request for information. The union need not propose the precise alternative to providing the information unedited." *Id.* at 21.

### 2. Application to this Case

The underlying facts are not really in dispute. It is the characterization of events that divides the parties. In the NLRB's view, there were two rounds of discussions. In the first round Trosky orally requested the doctor slips and Bisett responded by (1) saying that because the slips contain confidential medical information, they could be produced only if the individual employees signed releases and (2) giving Trosky a form of release. In the second round Trosky made a written counterproposal, requesting the slips with certain confidential information redacted, and Bisett's written response repeated the prior demand for employee releases and added a demand for Union payment of expenses to collect the doctor slips.

The Company counters that there was really only one round of discussion, with Trosky's written request being only the formal statement of the prior oral request. In support of this view, it notes Trosky's admission at the hearing that Bisett had asked him to put his oral request in writing. A reasonable person could agree with the Company's view. But this view does not take into account Trosky's concession that the slips be redacted—a concession made in the written

request but not the oral one. The written request did not repeat the first request but attempted to accommodate the concern expressed in Bisett's initial response. In any event, the Company's view is certainly not compelled by the record. The Board's view is a reasonable characterization of the evidence, and we must therefore accept it. *Universal Camera*, 340 U.S. at 488, 490.

Given that there were two rounds of discussion, the Board was not unreasonable in deciding that the Company quit bargaining when, in response to Trosky's redaction proposal, the Company merely repeated its prior demand, modified only by adding a payment requirement. The duty to bargain requires good-faith negotiation in which "the parties enter into discussions with an open mind and a sincere intention to reach an agreement consistent with the respective rights of the parties." *Borden, Inc. v. NLRB*, 19 F.3d 502, 512 (10th Cir. 1994) (internal quotation marks omitted). Although a party is "not required to make concessions or to yield any position fairly maintained," *id.* (internal quotation marks omitted), the employer "is obliged to make *some* reasonable effort in *some* direction to compose his differences with the union, if § 8(a)(5) is to be read as imposing any substantial obligation at all." *NLRB v. Reed & Prince Mfg.*, 205 F.2d 131, 134-35 (1st Cir. 1953). Thus, it is not unreasonable for the NLRB to conclude "that the failure by an employer to submit any counterproposals tends to frustrate further bargaining and may thus constitute a clear rejection of the

collective bargaining duty spelled out in the [NLRA]." *Nat'l Mgmt. Consultants, Inc.*, 313 N.L.R.B. 405, 408 (1993). The Board held that the employer in *National Management* refused to bargain when it "offered no reasons, offered no counterproposals and made no attempt to schedule any meetings to discuss" the union's offer. *Id.*

In this case, as the Company points out, it did not refuse to produce doctor slips and Trosky made no effort to respond to Bisett's written reply. But the Board is not unreasonable in ruling that a party refuses to bargain in good faith when it merely repeats its prior position in response to a concession by the other party, at least when, as here, it does not attempt to explain why the other party's concession fails to satisfy its previously expressed concerns.

The Company also argues that it had no duty to respond to Trosky's request because it was defective in various respects: (1) Trosky's request was on his own behalf, not the Union's; (2) the request was overbroad; and (3) the request called for irrelevant confidential information. We address each in turn.

The assertion that Trosky's request was solely on his own behalf rests on the observation that Trosky's request was "on his personal station[e]ry." Aplt. Br. at 1. Both the premise and conclusion are flawed. The record does not indicate the source of the paper. It is plain paper on which is typed an inside address containing Trosky's name and a post office box number, which could as

well be a Union address as a personal one for all the record reveals. Moreover, the Company does not explain why a request on behalf of the Union could not be made on personal stationery. As a steward, Trosky handled grievances on behalf of the Union. When he made the request, he was pursuing grievances, one on his own behalf and one on behalf of a fellow union member, for which doctor slips were relevant. In any event, Bisett did not reject the request as not being on behalf of the Union. On the contrary, his response treats the request as coming from the Union; in particular, his last sentence is: "Kindly inform the company if *you (Union)* are ready to pay for [obtaining the slips]." R. Vol. II at GC 4 (emphasis added). The Board could properly treat the request as being one from the Union.

The basis of the Company's overbreadth claim is that the request includes doctor slips from employees not covered by the CBA. The factual premise is undisputed. The Board agrees that the request includes information regarding employees outside the bargaining unit. It also agrees that no need has been shown for that information; indeed, the Board modified the ALJ's order to exclude such records from the required production. But a request for information cannot be rejected outright just because it is overbroad. As previously stated, "an employer may not simply refuse to comply with an ambiguous and/or overbroad information request, but must request clarification and/or comply with the request to the

-17-

extent it encompasses necessary and relevant information." *Keauhou Beach Hotel*, 298 N.L.R.B. 702 (1990). The Company neither complied with the request nor sought clarification. Moreover, it did not state that the request was objectionable because of overbreadth. *See generally DaimlerChrysler Corp.*, 331 N.L.R.B. 1324, 1328 (2000) (failure to make objection at time of request for records precludes raising objection before Board), *enforced by DaimlerChrysler Corp. v. NLRB*, 288 F.3d 434 (D.C. Cir. 2002). The Board did not rule that the Company committed an unfair labor practice by refusing to produce doctor slips with respect to employees outside the bargaining unit. See *Country Ford Trucks, Inc. v. NLRB*, 229 F.3d 1184, 1192 (D.C. Cir. 2000) ("The alleged overbreadth of the Union's information request is also irrelevant because the Board only found that petitioner engaged in an unfair labor practice by failing to provide information about unit employees.").

Finally, the Company complains that Trosky's willingness to have certain information redacted from the doctor slips did not fully satisfy its confidentiality concerns. It notes that the Board itself modified the ALJ's order to require the redaction of not only the "diagnosis, treatment, or medication given," as proposed by Trosky, but also "the names of treating physicians," as sought by the Company. *Norris Sucker Rods*, 340 N.L.R.B., at n.1. This modification, it claims, vindicates its response to Trosky.

We disagree. It is well-established that the party raising a confidentiality objection carries the burden of proposing mutually agreeable accommodations. *United States Testing*, 160 F.3d at 20. The NLRB found that the Company did not meet this burden when it simply insisted on its first response to the request. The Company neither explained the inadequacy of the redaction proposed by Trosky nor offered any alternative to the proposal.

We agree that the mere refusal to "disclose the requested records *in the form and manner demanded by the Union*" is not a failure to bargain. *East Tenn. Baptist*, 6 F.3d at 1143-44. But *East Tennessee Baptist Hospital* is distinguishable. The union in that case demanded information regarding nonunit employees that the Hospital considered confidential. *Id.* at 1141. The Hospital declined to provide the information as requested, but, as an alternative, suggested that the information be turned over to a mutually agreed upon certified public accountant to evaluate it and report any violations of the collective bargaining agreement. *Id.* The union declined the Hospital's accommodation, apparently without comment or further negotiation. *Id.* The Sixth Circuit denied the NLRB's request for enforcement because "the [u]nion failed to establish that it was entitled to confidential information concerning nonunit employees . . . [and] the Hospital's offers were facially reasonable and not a pretext for refusal to bargain in good faith." *Id.* at 1145.

This dispute began similarly. Trosky requested confidential information. The Company objected, citing confidentiality concerns, and offered to release the information if the Union obtained signed medical-release forms. But this is where the similarity ends. At this point the union in *East Tennessee Baptist Hospital* ceased bargaining. Trosky, however, submitted a second, written request that proposed a different accommodation—redaction of medical information. Perhaps the Company did not think the redaction adequate, but rather than suggest the additional redaction of the doctor's name and specialty, the accommodation it eventually accepted as adequate, it reiterated its insistence that the Union obtain signed medical-release forms. Given the sequence of events, it was not unreasonable for the NLRB to conclude that the Company, not the Union, ceased bargaining.

## IV. CONCLUSION

The Company's petition for review is DENIED and the NLRB's cross-petition for enforcement is GRANTED. The NLRB's motion to correct caption is DENIED.