IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Lancaster,                          :
               Petitioner          :
                                 :
        v.                                 :    No. 131 C.D. 2023
                                 :    Argued: December 4, 2023
Pennsylvania Labor Relations Board, :
               Respondent       :

BEFORE:   HONORABLE ANNE E. COVEY, Judge
               HONORABLE STACY WALLACE, Judge
               HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT           FILED: January 16, 2024

The City of Lancaster (City) petitions for review of an adjudication of the Pennsylvania Labor Relations Board (Labor Board) holding that the City committed an unfair labor practice by not producing all correspondence between the City's Fire Chief and Battalion Chiefs over the course of most of 2021, as requested by the President of the International Association of Fire Fighters, Local Union Number 319 (Union). The City contends that the Labor Board erred in holding that the Union's request was presumptively relevant even though it lacked any reference to a particular subject of collective bargaining. The City further contends that its request for clarification was reasonable and not a refusal to bargain with the Union. For the reasons that follow, we reverse the Labor Board.

On September 21, 2021, the Union filed a charge of unfair labor practices with the Labor Board asserting that the City violated the Pennsylvania Labor Relations Act[1] by refusing to comply with an information request made by its president. The City filed an answer to the Union's complaint asserting that the

---

[1] Act of June 1, 1937, P.L. 1168, *as amended*, 43 P.S. §§211.1-211.15.

information request was overbroad and not germane to the City's collective bargaining agreement with the Union. On March 17, 2022, the parties entered into a joint stipulation of facts, and, thereafter, filed briefs in support of their respective legal positions.

A summary of the stipulated facts follows.

The Union is the exclusive bargaining representative for the City's 74 Fire Bureau employees. The rank of the uniformed personnel in descending order begins with the Chief and is followed by the Deputy Chief, Battalion Chief, Captain, Lieutenant, and Fire Fighter. The Chief and Deputy Chief are management positions excluded from the bargaining unit. At the time period relevant to the Union's unfair labor practice charge, the City did not employ a Deputy Chief. The four Battalion Chiefs, who were members of the bargaining unit, reported directly to the Chief on a daily basis.

On September 1, 2021, the Union president, Geoffrey Stone (Stone), emailed Patrick Hopkins (Hopkins), Business Administrator for the City, and his message stated as follows:

> Pursuant to my status as the exclusive collective bargaining representative [] I'm asking for all correspondence (via text, email, letter or otherwise) between the chief and individual bargaining unit member[s] from January 1, 2021-To Present.

Reproduced Record at 16a (R.R. __). Stone repeated the request in an email on September 14, 2021, stating that he would give the City until September 24, 2021, or "advise our lawyer to file unfair labor practice in harrisburg [sic]." R.R. 15a. That same day, Hopkins responded as follows:

> I was on vacation when you emailed and just got back in the office yesterday. I have reviewed your request and believe it is overly broad. You are not entitled to "all correspondence (via text, email, letter or otherwise) between the chief and individual

2

bargaining unit member [sic] from January 1, 2021-To Present." If you care to clarify specifically what documents you are asking about, please do so and then we can respond accordingly.

*Id*. Two days later, Stone emailed a response:

I dont [sic] want to waste any more time. [S]o are you denying my request for the what I asked [sic]? If so i [sic] will be moving forward with the [Unfair Labor Practice charge]. Just want to know a [sic] your official answer.

R.R. 14a. Later that day, Hopkins replied:

Correct. The answer I provided previously is the City's response.

R.R. 13a.

On September 21, 2021, the Union filed the unfair labor practice charge. On December 1, 2021, Stone wrote to Hopkins as follows:

Since my original request was to be too overly broad Ive [sic] been advised to narrow it down some by our lawyer. So I am asking again for all correspondence between the fire chief and battalion chiefs from jan [sic] 1[,] 2021 till present. . [sic]

Thanks[.]

R.R. 21a. That same day, Hopkins responded:

Your request remains overly broad. You are not entitled to see or be copied on every communication between the fire chief and the battalion chiefs. If you are able to clarify specifically what documents you are seeking and how they are relevant to fulfilling the union's bargaining duties, please do so and we can respond accordingly.

R.R. 20a. To this, Stone replied:

The request is not overly-broad. In fact, in response to your earlier claim of over-breadth, I narrowed the request today to only those communications between the Chief and Battalion Chiefs within the time limit previously provided.

3

> The information is necessary and relevant to [the Union's] enforcement of the collective bargaining agreement, and monitoring for potential breaches of same.
>
> Given the fact the union has limited its request to a specific time-period (since January 1, 2021) and has now further limited its request to only those communications between the Chief and [Battalion Chiefs], this should be an easy request to fill. As there is nothing privileged or confidential in these communications, there should be no further problem in providing the requested information.

R.R. 19a-20a. Hopkins reiterated his position:

> As I had explained previously, you are only entitled to documents to the extent they are relevant to fulfilling the union's bargaining duties. You have not narrowed your request to any particular open grievance, subject of bargaining, or other matter related to your union responsibilities, and you are not entitled to an unfounded fishing expedition. Please be guided accordingly.

R.R. 18a-19a.

The Union's unfair labor charge asserted that the City violated the Pennsylvania Labor Relations Act because the information requested was "necessary and relevant to the enforcement of the collective bargaining agreement, and [to] monitor compliance with said agreement." R.R. 6a, ¶4. In its answer, the City noted, *inter alia*, that the request for "all correspondence" is a demand "to be a party to every communication . . . regardless of whether any specific communication has anything to do with collective bargaining rights." R.R. 7a, ¶3.

Although the unfair labor practices charge was prompted by the Union's first document request, both parties briefed the legal issues raised in the Union's revised request. The Labor Board's Hearing Examiner issued a proposed decision and order holding that the City violated Section 6(1)(a) and (e) of the

4

Pennsylvania Labor Relations Act[2] and what is known as the Policemen and Firemen Collective Bargaining Act (Act 111).[3]  The proposed order directed the City to provide the requested information.

The Hearing Examiner reasoned that it "cannot be seriously disputed" that the Union's request pertained to the working conditions of bargaining unit members and that "the information must be deemed presumptively relevant under the [Labor] Board's case[]law."  Proposed Decision at 5; R.R. 29a.  Further, the Union had "no duty to specify" the request because it was "readily apparent."  *Id*.  The Hearing Examiner rejected the City's argument that the Union was not entitled to confidential correspondence because the City did not raise that issue prior to the

---

[2] Section 6 of the Pennsylvania Labor Relations Act states, in pertinent part, as follows:

> (1) It shall be an unfair labor practice for an employer--
>
>> (a) To interfere with, restrain or coerce employes in the exercise of the rights guaranteed in this act.
>>
>> * * *
>>
>> (e) To refuse to bargain collectively with the representatives of his employes, subject to the provisions of Section Seven(a) of this act.

43 P.S. §211.6(1)(a), (e).

[3] Act of June 24, 1968, P.L. 237, No. 111, *as amended*, 43 P.S. §§217.1-217.12.  Section 1 of Act 111 states, in relevant part, as follows:

> Policemen or firemen employed by a political subdivision of the Commonwealth or by the Commonwealth shall, through labor organizations or other representatives designated by fifty percent or more of such policemen or firemen, have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits, and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of this act.

43 P.S. §217.1.

5

Union's filing of an unfair labor practice charge. The Hearing Examiner also found that the City did not make a reasonable attempt to accommodate the Union's request.

The City filed timely exceptions with the Labor Board, to which the Union responded. On January 24, 2023, the Labor Board issued an adjudication that dismissed the City's exceptions and adopted the Hearing Examiner's proposed decision and order as "absolute and final." Labor Board Adjudication at 4; R.R. 40a. The Labor Board stated that the City "flatly refused" to provide the Union with the requested documents and did not "propose any means of coopera[tion]." *Id.* Further, the City did not raise confidentiality concerns when the Union first made its request.

The City filed a petition for this Court's review of the Labor Board's adjudication. On appeal,[4] the City raises two issues: First, the City argues that the Labor Board erred when it determined the Union's request was presumptively relevant and placed the burden on the City to prove otherwise. Second, the City argues that the Labor Board erred when it determined the City did not make a good faith effort to accommodate the Union's request in light of the City's concerns about confidentiality and chain of command issues.

The Labor Board responds that it did not err when it determined that the City's "blanket refusal to provide any documents in its possession" demonstrated a lack of good faith in violation of Section 6(1)(a) and (e) of the Pennsylvania Labor Relations Act.[5] Labor Board Brief at 3.

---

[4] This Court reviews a final order of the Labor Board to determine whether all necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether a party's constitutional rights were violated. *Rozek v. Bristol Borough*, 613 A.2d 165, 167-68 (Pa. Cmwlth. 1992).

[5] Although the Union is an intervenor in this matter, it did not file a brief. Instead, it noted, in a September 13, 2023, letter to this Court, that it joins in the brief filed by the Labor Board.

In its first issue, the City argues that the Labor Board erred in holding that the Union's request was presumptively relevant. The City argues that presumptively relevant document requests are those that relate specifically to the terms and conditions of employment within the bargaining unit. By contrast, the Union's request was so broad that it is impossible to say that it related to mandatory subjects of bargaining. The Labor Board improperly invoked the presumption on the Union's "bare assertion" of entitlement, without any explanation.

The City relies upon federal decisional law, noting that this Court has recognized "that when there is no meaningful difference between [state law] and the National Labor Relations Act [, 29 U.S.C. §§151-169]," it is appropriate to "look to federal case law for guidance." *Commonwealth v. Pennsylvania Labor Relations Board*, 527 A.2d 1097, 1099 (Pa. Cmwlth. 1987).

The United States Court of Appeals for the Third Circuit recently established that in a union's request for information, "the threshold question is whether the requested information is relevant to fulfilling the [u]nion's bargaining duties." *Crozer-Chester Medical Center v. National Labor Relations Board*, 976 F.3d 276, 285 (3d Cir. 2020) (holding that union request for asset purchase agreement detailing how jobs in the bargaining unit would change after acquisition was presumptively relevant). The union bears the initial burden of showing that the information it is requesting is relevant, unless it is "presumptively relevant." *Id*. at 286-87. If the information is presumptively relevant, the burden is on the employer to produce the requested information or to rebut the presumption. A request for "wage and related information" is considered "presumptively relevant" because it "concerns the core of the employer-employee relationship[.]" *Curtiss-Wright Corporation, Wright Aeronautical Division v. National Labor Relations Board*, 347

7

F.2d 61, 69 (3d Cir. 1965) (requests for a list of job descriptions and wage rates for 80 specified administrative positions held to be presumptively relevant as "wage and related information"). Where the employer rebuts the presumption of relevance, then the union must demonstrate relevance. *Id.*

Pennsylvania precedent provides additional guidance on what information will be considered presumptively relevant as relating to the core of the employer-employee relationship. In *Commonwealth*, 527 A.2d at 1099, for example, a request for information on four pending grievances was held presumptively relevant. Likewise, a request for a list of witnesses to be called for a suspension hearing was held presumptively relevant. *Pennsylvania Department of Corrections v. Pennsylvania Labor Relations Board*, 541 A.2d 1168 (Pa. Cmwlth. 1988). Adjudications from the Labor Board have held requests for "wage information" are presumptively relevant, as are requests for policies on promotion, employee handbooks, and information about employee health insurance. *See Pennsylvania Nurses Association v. Pennsylvania Department of Public Welfare*, 17 PPER ¶17125 (Final Order 1986); *United Mine Workers of America District 2 v. Fayette County*, 36 PPER ¶72 (Proposed Decision and Order 2005); *AFSCME District Council 85 v. Erie County*, 37 PPER ¶171 (Proposed Decision and Order 2006). By contrast, Labor Board precedent has established that requests for confidential employee information, managerial prerogatives, and witness statements obtained during an employment-related misconduct investigation are not presumptively relevant. *Commonwealth of Pennsylvania*, 19 PPER ¶19138 (Final Order 1988); *Pennsylvania Department of Agriculture*, 18 PPER ¶18003 (Final Order 1986); *AFSCME, Council 13*, *AFL-CIO v. Pennsylvania Department of Corrections*, 19 PPER ¶19039 (Final Order 1988).

The City argues that the Union's request for "all correspondence," in both the first and revised request, did not meet the presumptively relevant standard. It did not relate to "wage and related information," as did the request for a list of job descriptions and wages for administrative positions in *Curtiss-Wright*, 347 F.2d 61. It did not seek information on how jobs would change after the sale of the employer's assets, as in *Crozer-Chester Medical Center*, 976 F.3d 276. Because the Union's request was not on its face relevant, it had the burden of showing that the information requested was relevant to fulfilling its bargaining duties. *Id.* at 285. The Union did not make that demonstration.

The Union did not attempt to explain how all communication between the Fire Chief and the Battalion Chiefs would pertain to, or be relevant to, fulfillment of the Union's bargaining duties. It simply made the "bare assertion" that the president's "status as the exclusive collective bargaining representative" authorized the information request, R.R. 16a, and that it was relevant to "enforcement of the collective bargaining agreement." R.R. 19a. Notably, the Labor Board has recognized that a union's "bare assertion" that it needs information is not sufficient to require the employer to supply that information. *See Pennsylvania Nurses Association*, 17 PPER ¶ 17125 (Final Order 1986) (citing *Detroit Edison Company v. National Labor Relations Board*, 440 U.S. 301 (1979)). Further, a union is not entitled to a fishing expedition. *Crozer-Chester Medical Center*, 976 F.3d at 285 (quoting *Detroit Edison Company*, 440 U.S. at 318).

The Union requested "all correspondence" between the Fire Chief and the Battalion Chiefs over an 11-month period of 2021, and the initial request was even broader, seeking all written communications between the Chief *and all 74 bargaining unit members* over a 9-month period. The Union, itself, acknowledged

that its initial request was overbroad. The City responded with a request for clarification about what documents were sought so that it could "respond accordingly." R.R. 15a.

Here, the Labor Board got it backwards. Instead of requiring the Union to explain why or how its request was relevant to its collective bargaining responsibilities, it burdened the City with identifying all documents that *might be* responsive and then explaining why certain information could not be provided.[6] The Labor Board placed the burden on the City to demonstrate "the information is *not* relevant or [that it] *cannot reasonably be* provided." Proposed Decision at 5; R.R. 29a (emphasis added). The Labor Board would have the City prove a negative. However, "[i]t is settled beyond dispute in this Commonwealth that the party defending in an action is not required to prove a negative in order to prevail." *In re Property Along Pine Road in Earl Township*, 743 A.2d 990, 994 (Pa. Cmwlth. 1999).

With respect to a public employer's duty to respond to a union's request for information, this Court has explained as follows:

> [A]n employer has a duty to furnish a union information relevant and necessary to enable it to intelligently carry out its statutory obligations and that under the standard of relevancy, it is sufficient that the union's request for information be supported *by a showing of probable or potential relevance*.

---

[6] The Labor Board directs the Court to *Commonwealth*, 527 A.2d at 1100. There, this Court held that "there is an obligation for an employer to make a diligent effort to obtain presumptively relevant information sought by the union." Labor Board Brief at 10. The Labor Board argues that the standard of "reasonable diligence" cannot be satisfied by "a blanket denial." *Id.* (citing *National Labor Relations Board v. John S. Swift Company*, 277 F.2d 641, 645 (7th Cir. 1960)). It was incumbent upon the City to respond with a list of the documents it can and will provide and to specify any information being withheld and the reason therefor. The Labor Board contends that an employer's "flat" refusal of a document request, without explanation or discussion, is not an acceptable response to a union's request for information.

10

*Department of Corrections*, 541 A.2d at 1171 (emphasis added). Here, the City was left in the dark. The Union did not support its request "by a showing of the probable or potential relevance" of the information. *Id*. Even when the City asked it to offer such support, the Union refused. In sum, a union must disclose enough about the information it seeks so that the employer can determine whether the requested information is presumptively relevant, or relevant at all, to the union's fulfillment of its bargaining duties.

There is neither statutory authority, nor precedent, to support the Labor Board's conclusion that the Union's request for "all correspondence" between the City's Fire Chief and Battalion Chiefs was presumptively relevant and disclosable. The Labor Board erred in holding that such a request was presumptively relevant on its face.

In its second issue, the City argues that even if it had an obligation to produce the documents requested by the Union, it was error for the Labor Board to hold that the City did not engage with the Union in good faith or attempt to raise its confidentiality and chain of command concerns. The City notes that "[t]he Tenth Circuit of the United States Court of Appeals has held that an employer can request clarification under the [National Labor Relations Act] when faced with an ambiguous or overbroad information request." City Brief at 32 (citing *Norris, a Dover Resources Company v. National Labor Relations Board*, 417 F.3d 1161, 1169 (10th Cir. 2005)). This is what the City did in the matter *sub judice*.

The City argues that the Union's need for information must be balanced against the "legitimate and substantial confidentiality interests asserted by the employer." City Brief at 35 (citing *Crozer-Chester Medical Center*, 976 F.3d at 293). The City contends that it has no authority to waive the confidentiality rights

11

of individual employees and that responding to the Union's request could have led to inappropriate (perhaps, even illegal) disclosure of an employee's disability status or medical diagnosis.

The City argues that the Union's request also raised a chain-of-command issue within the Fire Bureau. The Union president is a fire fighter, the lowest ranking employee within the department, and the Battalion Chiefs are three levels higher in rank. The City argues that if this Court were to affirm the Labor Board, it would effectively require the Fire Chief to copy a fire fighter on all emails to the Battalion Chiefs, which would be disruptive to the Fire Bureau's chain of command. A fire fighter is not entitled to participate in the operational decisions of the Fire Chief and Battalion Chiefs.

The Labor Board asserts that the City "flatly refused to comply with the information request," rather than discussing its concerns with the Union. Labor Board Brief at 11-12. Citing *Pennsylvania State Corrections Officers Association v. Department of Corrections (SCI Dallas)*, 37 PPER 24 (Proposed Decision and Order, 2006) (*PSCOA*), the Labor Board states that "an employer does *not* have an absolute right to deny an information request even when it has legitimate confidentiality concerns." Labor Board Brief at 12 (emphasis in original). In *PSCOA*, the hearing examiner determined that an employer's blanket refusal, without explanation or discussion, was not an acceptable response to a request for information from the union.

In response to the City's contention that sorting through hundreds or thousands of emails constitutes an undue burden, the Labor Board maintains that this is irrelevant because "[i]nformation must be turned over unless it plainly appears irrelevant." Labor Board Brief at 15. Any other rule, it contends, would "greatly

12

hamper the bargaining process [because] it is virtually impossible to tell in advance whether the requested data will be relevant except in those infrequent instances in which the inquiry is patently outside the bargaining issue." *Id*. (quoting *Robinson Township Police Association v. Robinson Township*, 31 PPER ¶ 31025 (Proposed Decision and Order, 1999)).

The Labor Board found that the City did not attempt to engage with the Union, but the record does not support this conclusion. The email chain between the Union president and the City administrator demonstrates that when the City sought clarification of the request, the Union abruptly threatened to file an unfair labor practice charge. The City did not announce a "flat refusal" of the Union's request but, rather, a willingness to "respond accordingly." R.R. 15a. The email exchange belies the Labor Board's conclusion that the City did not attempt to accommodate the Union's request. While willing to produce the relevant documents, the City needed to know what documents would, in fact, be responsive to the Union's request and whether they were the kind of documents to which the Union was even entitled.

In *PSCOA*, on which the Labor Board relies, it was noted that if an employer has a confidentiality interest at stake, it should propose a means for accommodating that interest together with the interests of the union. In other words, the parties should negotiate. Had the Union been more specific in its request for information, the required negotiation and accommodation could have occurred. In his December 1, 2021, email, the Union president asserted that "there is nothing privileged or confidential in these communications." R.R. 19a-20a. Made approximately three months *after* the Union had already filed its unfair labor practice charge, this conclusory assertion neither substantiated, nor shed light on, the Union's belief that the request did not implicate confidentiality.

13

In sum, the record established that the City was attempting to work with the Union, by seeking clarification of the information request, so that it could respond in a meaningful way.  The City never stated it would refuse to provide any and all information to the Union.  The Labor Board erred in holding that the City refused to bargain with the Union.

For the foregoing reasons, we reverse the Labor Board's order.


_____

MARY HANNAH LEAVITT, President Judge Emerita

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Lancaster,               :
           Petitioner     :
                            :
       v.            :     No. 131 C.D. 2023
                            :
Pennsylvania Labor Relations Board, :
          Respondent    :

# **O R D E R**

AND NOW, this 16th day of January, 2024, the order of the Pennsylvania Labor Relations Board, in the above-captioned matter, is REVERSED.

_____
MARY HANNAH LEAVITT, President Judge Emerita